**In the Matter of Michael Alan KELLER, Debtor.**

**Bankruptcy No. A91–62453–ADK.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Jan. 29, 1993.

Joseph H. King, Jr., Atlanta, GA, for movants.

C. Brooks Thurmond, III, Atlanta, GA, for trustee.

## MEMORANDUM OF OPINION

A. DAVID KAHN, Chief Judge.

The above-styled Chapter 7 bankruptcy case is before the Court on a Motion for Order Requiring Turnover of Rents Received by Trustee filed by Velma Bloss, Linda Olsein, J.C. Blackmon, Jr., Don R. Henderson, Clinton E. Muth, Virginia Muth, A.L. Bramlett, Beverly McDonald Rasmussen Clark, James Rasmussen, Daniel A. Rasmussen, Willene J. Thomason, and C.L. Holmes ("Movants").[1] A hearing was held on said Motion on September 15, 1992, after which the Court took the matter under advisement. The Court finds this matter to be a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). After consideration of argument of counsel and the pleadings, the Court makes the following findings of fact and conclusions of law.

### I.

Prepetition, the Debtor executed deeds to secure debt on certain properties (the "Properties") in favor of the Movants.[2]

---

1. At the hearing on September 15, 1992, attorney for the Movants orally withdrew the Motion for turnover as to A.L. Bramlett, Willene Thomason, and C.L. Holmes as it appeared that none of the rents collected by the Trustee were generated from the properties in which they had an interest.

2. Movants have security deeds upon the following properties:

    Velma Bloss/Linda Olsein—7119 Church Street, Riverdale

    J.C. Blackmon, Jr.—4752 Mitchell Street, Forest Park

The deeds to secure debt contained an assignment of rents clause. On February 6, 1991, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On the petition date, the Debtor was in possession and collecting rents from the Properties. On June 27, 1991, C. Brooks Thurmond, III was appointed as trustee (the "Trustee"), and the case was then converted to Chapter 7 on October 18, 1991. The Trustee remained in possession and collected rents from the Properties until December 1991 as provided in consent orders entered November 14, 1991 (the "Consent Orders"). The rents in dispute (the "Rents") are those rents collected by the Trustee postpetition but prior to December 1991, pursuant to the Consent Orders allowing the secured creditors to collect rents going forward upon the occurrence of certain events. *See* Trustee's Trial Exhibits 1–5.[3]

## II.

Movants maintain that, prepetition, the Debtor unconditionally assigned all rents from the Properties to them and that, therefore, the Rents are not property of the bankruptcy estate and should be turned over to them. The Trustee contends that 1) the assignments are not unconditional in that Movants were required to take some affirmative action in order for their rights in the Rents to become effective and 2) Movants' rights in the Rents are subordinate to other rent assignments to other parties not before the Court.

■ Resolution of this issue is dependent upon state law. In *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), the Supreme Court held that

> [p]roperty interests are created and defined by state law. Unless some federal

Don R. Henderson—3300 Burk Drive, Chamblee

Clinton and Virginia Muth—3241 Beaver Drive, Douglasville

Beverly McDonald Rasmussen Clark, James Rasmussen, and

Daniel A. Rasmussen—4063 Evelyn Drive, Powder Springs

interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy."

440 U.S. at 55, 99 S.Ct. at 918 (citation omitted). The Properties are all located in Georgia; therefore, it is Georgia law to which we must look.

Another Bankruptcy Judge of this District has recently analyzed the current law on rent assignments in Georgia. In the case of *In re Polo Club Apartments Assocs., Ltd. Partnership*, 150 B.R. 840 (Bankr.N.D.Ga.1993),[4] Judge Stacey W. Cotton, after a thorough review of Georgia case law, concluded that it is possession of the property which determines the right to receive rents from that property. In so holding, the Court stated

> a security deed grantee out of possession is not presently entitled to receive rents merely upon the occurrence or existence of a default. The grantor being in possession and receiving rents may not be disturbed in his right to the rents by the security deed grantee until he takes possession or takes other appropriate action to subject the land and rents to the debt. This means that affirmative action or positive steps must be taken by the security deed grantee before there is a present right to receive rents under such written rent assignment.

*Polo Club Apartments*, at 851.

The Court based its reasoning upon a line of Georgia cases which tied the right to collect rents with possession of the proper-

---

**3.** "Trial Exhibits" refers to exhibits introduced at the hearing on Movants' Motion for Order Requiring Turnover of Rents Received by Trustee held on September 15, 1992.

**4.** For the convenience of the Parties, a copy of *Polo Club Apartments* is attached hereto as Exhibit "A." [Editor's note—see *Polo Club Apartments* at 150 B.R. 840.]

ty. These cases included *Penn Mut. Life Ins. Co. v. Larsen,* 178 Ga. 255, 173 S.E. 125 (1934); *Stevens v. Worrill,* 137 Ga. 255, 73 S.E. 366 (1911); and *Polhill v. Brown,* 84 Ga. 338, 10 S.E. 921 (1890). The Court opined that, even where an assignment is termed "absolute" or "unconditional," a grantee out of possession would not be entitled to the rents without additional action on his part.

> Rent assignments in security deeds, or separate rent assignments given in connection with security deeds, are sometimes characterized as absolute or irrevocable. Common sense suggests that if an absolute conveyance by security deed does not convey an absolute estate as to title, an absolute conveyance by assignment of rents arising from the same property does not convey an absolute estate in the rents. In both situations, the grantor retains a right of possession and of redemption which comprise a part of the grantor's equitable estate. Further, a rent assignment conveyed as security for a debt, where the grantor is entitled to the rents until default, is conditional. As with the title conveyed by a security deed, additional affirmative action by the grantee is required before the interest conveyed by the rent assignment can become absolute.

*Polo Club Apartments* at 850.

The same result was reached under the former Bankruptcy Act in the case of *Acacia Mut. Life Ins. Co. v. Perimeter Park Inv. Assocs. (In re Perimeter Park Inv. Assocs.),* 1 B.R. 473 (Bankr.N.D.Ga.1979). In *Perimeter Park,* the plaintiff argued that it had an absolute assignment of rents and that, without any action on its part, it was entitled to all rents accruing after the debtor's default. The Court rejected this contention holding that, in Georgia, a grantee out of possession is not entitled to receive the rents upon default without taking further action to invoke its rights in the rents.

> The assignment of rents in a deed to secure debt in Georgia is thus treated as expressing in contractual terms the mortgagee's interest in the rents and profits as additional security.
>
> The lender can attain the rights to the rentals by gaining actual possession, or "he may assume the possessory right to receive rents by notice to occupants or tenants. Thereafter, all rents must be paid to the lender or his agent, and are credited against the secured debt after deducting the costs of collection."

*Id.* at 477 (quoting Pindar, *Georgia Real Estate Law,* § 21–14.2).

Movants rely upon the cases of *Padgett v. Butler,* 84 Ga.App. 297, 66 S.E.2d 194 (1951) and *Jones v. United States (In re Jones),* 77 B.R. 981 (Bankr.M.D.Ga.1987). In *Padgett,* the grantor had executed a security deed which contained the following provision: "... as further security and [sic] Borrower hereby (in the event of any default hereunder) assigns to the Lender all rents, issues and profits from said property." *Id.,* 84 Ga.App. at 298, 66 S.E.2d 194. This language is almost identical to the provision in the security agreements under consideration in this proceeding.[5] However, after careful consideration of *Padgett,* this Court is unable to find, as Movants have asserted, that it is dispositive of the issue at hand.

In *Padgett,* the debt remained unpaid and in default at the time of the grantor's death. The grantor's widow, who was living apart from the grantor in a state of marital separation at the time of the grantor's death, continued to collect the rents from the property. The Court found that a complaint which alleged that 1) there was a written assignment of rents in the event of a default under the security agreement, 2) the debt secured remained unpaid, and 3)

---

**5.** The provision in the Movants' security agreements provides "As further security the Borrower hereby (in the event of any default hereunder) assigns to the Lender all rents, issues and profits from said property." In addition, the security agreements provide that "if said indebtedness be not paid when due, whether by accel- eration or otherwise, the Lender may enter upon said premises, take possession, and collect the rents and profits thereof...." This clearly indicates that affirmative action on the part of Movants was required to invoke their rights in the Rents.

the defendant, the grantor's widow, had constructive knowledge of the assignment of rents was sufficient to set out a cause of action. *Id.* at 299–300, 66 S.E.2d 194.

The *Padgett* opinion does not reveal the grounds upon which the grantor's widow based her claim to the rents. Furthermore, the *Padgett* opinion was a Georgia Court of Appeals case. It failed to even cite the Supreme Court of Georgia case of *Penn Mutual*, 178 Ga. 255, 173 S.E. 125, which held that a grantor out of possession was not entitled to rents. Therefore, the Court declines to find that *Padgett* is controlling on the issue of the entitlement to rents, and must consequently reject the reasoning of *Jones*, 77 B.R. 981, which found *Padgett* to be determinative.

■■■ Thus, persuaded by the reasoning of *Polo Club Apartments*, this Court finds that, as long as the grantor retains possession of the property, he is entitled to collect and freely use the rents. Even after default, the grantor is entitled to collect and use the rents until some affirmative action is taken by the grantee to invoke his right to the rents. In the proceeding *sub judice*, Movants had perfected security interests in the Rents upon the recording of their deeds to secure debt from the Debtor.[6] However, their rights to the Rents were inchoate rights which could be made choate upon 1) default by the Debtor under the deeds to secure debt[7] *and* 2) the taking of some affirmative action to displace the Debtor (or his bankruptcy trustee) from collecting the Rents. Therefore, the Court finds that Movants' rights in the Rents became choate upon the filing of their respective motions for relief from stay.

This conclusion, however, does not resolve the issue before the Court; to wit: Who is entitled to the Rents collected by the Trustee postpetition through November 1991? The Trustee contends that he is entitled to the Rents on two grounds. First, he claims he is entitled to the Rents because, until Movants took action to activate their rights in the Rents, he, as successor to the rights of the Debtor, had the right to retain the Rents for the benefit of the bankruptcy estate.

■■■ This issue was addressed by the Court in *Polo Club Apartments*. The Court found that, although no Georgia case authority could be located addressing this situation, it was convinced that a Georgia state court would award to the grantee any accrued rents which had not been spent by the grantor at the time the grantee invokes his rights to the rents. *Id.* at 854. With the mandate from *Butner* that a federal court should reach the same result regarding state-created property rights as a state court would reach, the Court was compelled to award the accrued rents to the grantee. This Court finds the reasoning in *Polo Club Apartments* to be sound. While a grantor may have free use of rents prior to action by a grantee to invoke his rights in those rents, once such action is taken, the grantee has a choate interest in all rents on hand and going forward. Thus, as between the Movants and the Trustee, the Court finds that the Movants have a superior interest in the Rents.

■■■ The Trustee also argues that the Consent Orders entered on November 14, 1991 require that the Trustee prevail. *See* Trustee's Trial Exhibits 1–5. The Consent Orders provide, *inter alia*, the following:

4. The trustee is entitled to collect November, 1991 rent, and rent accruing prior to one of the following events:

(a) Consummation of a judicial sale or foreclosure sale of the property, resulting in transfer of the estate's

---

6. This finding that Movants had perfected security interests in the Rents is intended to be a finding vis a vis the Trustee only. During the hearing held on September 15, 1992, the Trustee suggested that other lienholders may have superior rights to the Rents over the Movants. He also suggested that the security deeds of the other lienholders may have had clauses prohibiting further assignment of rents. The other lienholders are not before the Court, and the Court makes no findings on the validity of the Movants' assignments vis a vis other lienholders.

7. Although no evidence was presented on the existence of defaults on the debts underlying the security deeds in question, it appears that the Parties concur that the debts were in default.

title or equity of redemption to another entity;

(b) Agreement in writing between the holders of all valid assignments of rent, specifying who is to receive rent; or

(c) Entry of an unappealable order by a court of competent jurisdiction determining the entity to whom the rents should be paid.

On the occurrence of one of these events, the trustee shall direct the tenants to pay rent in accordance therewith.

Trustee's Trial Exhibits 1–5, ¶ 4. After consideration of argument of counsel, the Court finds that the above provision found in the five Consent Orders only permitted the Trustee to collect rents and was not intended to determine the ultimate rights of the Parties to those rents.

Having found that Movants have a superior right to the Rents over the Trustee, the Court must consider two other factors before turning the Rents over to Movants. First, it is probable that the Trustee may make a claim for administrative expenses against the Rents pursuant to 11 U.S.C. § 506(c). Thus, the Court will provide the Trustee the opportunity to file such a request. Second, it appears that there are other entities which may claim an interest in the Rents. Litigation is pending in the state court system to determine the validity and priority of liens on the Properties. Therefore, the Court deems it appropriate that, after the § 506(c) costs, if any, are determined, the Trustee pay into the appropriate state court forum the remaining Rents. The rights to the Rents among the various claimants may then be determined by the state court.

Pursuant to Fed.R.Civ.P. 54(a) made applicable to this proceeding by Fed. R.Bankr.P. 9014, an appropriate Order is entered contemporaneously herewith in accordance with the reasoning above.